IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

KRISTOPHER KING,
*PLAINTIFF*

V.

Case No. 1:16-CV-1331

DANE O'NEILL,
JOHN DOE 1, and
JOHN DOE 2
*DEFENDANTS*

**PLAINTIFF'S ORIGINAL COMPLAINT
& JURY DEMAND**

**Introduction**

This civil action arises from Defendants' violations of Plaintiff's civil rights on or about December 13, 2016, in Austin, Texas.  This action is brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and the United States Constitution.  This is a civil rights action challenging as unconstitutional the above-named Defendants' intentional seizure of Plaintiff without reasonable suspicion and their non-consensual search of Plaintiff's body under his clothing without a warrant. Plaintiff Kristopher Cody King (hereinafter "King") seeks damages from Defendants Dane O'Neill, and two unidentified males, in their individual capacities as they acted under color of law, for depriving King of his Fourth and Fourteenth Amendment rights under the United States Constitution.

1

**Jurisdiction and Venue**

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, and §1343.  Also, the supplemental jurisdiction of this Court to hear claims arising under any possible state law is invoked pursuant to 28 U.S.C. §1367.  Venue in this Court is appropriate under 28 U.S.C. §1391(b).

**Plaintiff**

2.      Plaintiff Kristopher King is an adult resident of Austin, Travis County, Texas.

**Defendants**

3.      Defendant Dane O'Neill (hereinafter "O'Neill") is a police officer with the Austin Police Department, Badge Number 7225, and is sued in his individual capacity.  He acted under color of law.

4.      Defendant John Doe 1 (hereinafter "Doe 1") is an unidentified police officer with the Austin Police Department.  He acted under color of law and is sued in his individual capacity.

5.      Defendant John Doe 2 (hereinafter "Doe 2") is an unidentified police officer with the Austin Police Department, and is sued in his individual capacity.  He acted under color of law.

2

**Statement of Facts**

*King was pulled over for an alleged minor traffic infraction while riding his motorcycle.*

7.      Kristopher King, who goes by his middle name – Cody, is a motorcycle enthusiast.  On December 13, 2016, he was also a student at the Texas School of Bartenders.  Shortly after the incident complained of in this lawsuit, King graduated from that program.

8.       On December 13th, King traveled west-bound on Koenig Lane, in Austin, Texas, near the Koenig Lane and Avenue F intersection.  An unmarked Austin Police Department (hereinafter "APD") unit pulled up behind him and hit its lights.  As soon as King noticed the lights, he sought a safe place to pull over, and pulled over near the corner of Avenue F and Koenig Lane.

9.      When King used his foot to put down the kick-stand on his motorcycle, he saw two APD officers, both in full uniform, exit the unmarked unit and approach him.  Doe 1 told King that he was pulled over for failing to signal a turn, and he asked King for his license and insurance.  King immediately provided both, which were valid, to Doe 1, who walked back to the unit.  At some point, sensing that the stop was odd and not believing he committed a traffic infraction, King insisted that he be kept in front of the APD unit and sought assurance that the DMAV was filming the incident.  One of the trio told King the DMAV was always filming so long as the lights were on.

10.      As soon as Doe 1 departed to run King's information, Defendant Dane O'Neill stepped very close to King – within touching distance.  O'Neill, in a hostile and aggressive manner, barraged King with questions about the vest he was wearing, and patches on that vest.  King told O'Neill that he would not answer any questions.  O'Neill, using a hostile and aggressive tone, continued to barrage King with questions, despite King's refusal to discuss his clothing.  During the following exchange,

O'Neill remained within arm's reach of King, posturing in a menacing manner. Based on O'Neill's posturing, King reasonably believed that O'Neill was attempting to provoke King's temper. King, though outraged on the inside, remained outwardly calm.

11.     King heard Doe 2 tell Doe 1: "**He came back clean**," meaning that King did not have any warrants. King told O'Neill: "You heard him, I'm clean. I need to get to class." King had a midterm at school that day.

12.     King then watched Doe 2 pop the trunk of the unmarked unit and take out a camera. Doe 2 told King that he was going to take photographs of King's tattoos. King stated that he did not want them to take photographs. Doe 2 responded that he would be taking photographs there on the street, or he would arrest King and take photographs at the jail.

13.     King pulled out his cellphone and began filming the exchange with the officers. Doe 2 told King that they "could do it one of two ways, we can do it down at the jail or do it here outside." King asked, "it has to be done?" Doe 2 responded, "Yes." King said, "If it has to be done… does this happen to everybody? I'm just curious why it's me. Why am I getting detained for this?" Throughout this exchange and the following, cars passed by along the busy road, and a construction crew nearby stood and watched. Some of the construction workers took out their cellphones to record the incident.

14.     King continued, "I'm going to school right now and you're detaining me, you're preventing me …" Doe 2 responded, "yeah, we pulled you over. You make it sound like we just 'pulled you out of the air." King asked, "what did you pull me over for?" Doe 2 responded, "we pulled you over for failing to use your signal." King asked, "did I receive a ticket?"

15.     Doe 2 responded by saying, "**you're not going to receive a ticket.  Ok.  But, what I'm telling you is we are going to take pictures of you**."  King said, "sir, I'm sorry, but this is new to me, this is just shocking."  Doe 2 said, "ok, well let me talk and stop interrupting me."

16.     King complained, "I don't feel like going to jail – I've got class to go to."  Doe 2 responded, "I'm not telling you you're going to jail right now, but I'm telling you if you don't allow us to take your picture here, we're going to go down to the jail to take pictures down there, ok?"  During Doe 2's explanation of King's 'options', King asked if he could call his lawyer.  After Doe 2 told him that if he refused to allow them to take pictures there on the street, they would take him to jail, Doe 2 told King, "no you cannot call your lawyer."

17.     After hearing that King would be arrested if he refused, and that he could not call a lawyer, King said, "ok, take the pictures."  In response, Doe 2 said, "that's what I thought."  One of the three officers then ordered King to take his helmet off.  King complied.  Doe 2 took the helmet from him, and placed it on King's motorcycle.

18.     Doe 2 then photographed King's hands and arms, that were not covered by clothing.  As Doe 2 took the photographs, O'Neill stood within touching distance of King.  Doe 1 watched the photographs be taken, as he stood one step away from O'Neill, and approximately two paces away from King.  King commented: "Taking my pictures, profiling me."  Doe 1 was writing on a small note pad the size of his hand, as he watched the photographs be taken, presumably noting the body part being photographed.

19.     Doe 2 and O'Neill then placed their hands on King, and drew up the sleeve of his shirt to expose King's left shoulder.  Neither asked King's permission to touch him.  King did not give them

5

permission to touch him. Their hands were within inches of King's face. King stood calm, still, and silent, though seething with anger on the inside, as the two men touched him and photographed his left shoulder. Doe 1 continued to watch. Then, Doe 2 asked King, "do you have anything on your chest or anything like that? Your stomach? Your back?" Then, Doe 2 ordered King, **"unzip your vest and lift your shirt up for me**," as the four of them stood next to a busy road, in broad daylight.

20.    King complied. Doe 2 asked if he had anything on his back. O'Neill then, without asking for permission and without permission, lifted King's shirt in the back to expose his skin for Doe 2 to photograph. Angry, but remaining outwardly calm and polite, King then said to the trio: "This is a little humiliating, don't you think?"

21.    Construction workers attempted to communicate with King and share the video evidence they took of the stop. The trio, however, prevented King from staying at the location of the detention, and ordered him to leave. King proceeded to school, wherein he failed his midterm.

22.    King has been fearful to ride through Austin, afraid that he will be pulled over for no reason by the police. King has relived the emotional turmoil the incident created, each time he tells a friend or family member about what happened to him on December 13th. He has lost sleep. He is afraid to stay at his home, knowing that the same officers who had no regard for his rights know where he lives.

**Theories of Liability**

23.    Plaintiff incorporates by reference all the foregoing paragraphs, and asks that insofar as the following theories of liability include additional factual allegations, those allegations be taken as true, and further alleges as follows:

24.     King has a clearly established Constitutional right to associate with groups of his choice, and to express his affiliation through clothing. *Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir. 2002) (wearing motorcycle club colors in a public place is First Amendment protected speech); *Piscottano v. Murphy*, 511 F.3d 247, 274 (2nd Cir. 2007) (wearing clothing indicative of association with a motorcycle club of which law enforcement disapproves is First Amendment protected speech); *Healy v. James*, 408 U.S. 169, 185-86 ("the [Supreme] Court has consistently disapproved governmental action imposing criminal sanctions or denying rights and privileges solely because of a citizen's association with an unpopular organization").  Defendants intentionally, knowingly, recklessly, or with deliberate indifference to the rights of King and travelers, caused King to be seized without reasonable suspicion to believe he was committing a crime purely and solely because he was riding a motorcycle, wearing a vest.  Defendants violated the First Amendment to the United States Constitution and 42 U.S.C. §1983 when they unlawfully seized him because of his clothing.

25.     King has a clearly established Constitutional right to be present in a public place and gather information about a matter of public concern. *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ("Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting the free discussion of governmental affairs.").  King was exercising his right to be present in a public place and gather information about his detention when he attempted to communicate and garner video evidence from the construction crew at the conclusion of the detention.  Defendants intentionally, knowingly, recklessly, or with deliberate indifference to the rights of King and travelers, violated the First

Amendment to the United States Constitution and 42 U.S.C. §1983 when they ordered him to leave before he could gather that evidence.

26.    King has a clearly established Constitutional right to simply be present in a public place and loiter. *Chicago v. Morales*, 527 U.S. 41 (1999); *Wright v. Georgia*, 373 U.S. 284, 291-92 (1963). King was exercising his right to be present in a public place by attempting to remain at the scene of the detention and communicate with the construction workers.  Defendants intentionally, knowingly, recklessly, or with deliberate indifference to the rights of King and travelers, violated this fundamental Constitutional right when they ordered him to leave to prevent him from communicating with witnesses.

27.    King has a clearly established Constitutional right to be free from an unreasonably prolonged detention. *Rodriguez v. U.S.*, 135 S.Ct. 1609, 1614, 1615 (2015) ("Authority for the seizure thus ends when tasks tied to the traffic infraction are – or reasonably should have been – completed […] "The seizure remains lawful only 'so long as [related] inquiries do not measurably extend the duration of the stop.'"); *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."); *Brown v. Texas*, 443 U.S. 47, 51-52 (1979) (holding that police may not stop an individual and demand identification without reasonable suspicion to believe he is involved in criminal activity); *Benitez v. Montoya*, 2004 U.S. Dist. LEXIS 21743, 2004 WL 2370637 (N.D. Cal., Oct. 20, 2004) (holding that mere membership in a suspected gang is not sufficient to justify a *Terry* stop to photograph someone), *citing California v. Rodriguez*, 21 Cal. App. 4th 232, 239, 26 Cal. Rptr. 2d 660 (1993); *Akridge v. Finnegan*, 2016 U.S. Dist. LEXIS

8

22694, 2016 WL 743416 (M.D. Tenn., Sept. 11, 2015) (holding suspected gang affiliation alone insufficient to warrant a *Terry* stop); *Parks v. State*, 330 S.W.3d 675 (Tex. App.—San Antonio 2010, pet. ref'd) (holding suspected gang affiliation alone insufficient basis for a *Terry* stop). Defendants intentionally, knowingly, recklessly, or with deliberate indifference to the rights of King and travelers, violated the Fourth Amendment and 42 U.S.C. §1983 when after 1) verifying King had no warrants, and 2) expressly telling King they would not issue a traffic ticket, Defendants continued to hold King on the side of the road to photograph him.

28.      King has a clearly established Constitutional right to be free from a suspicionless non-consensual search, under his clothing. *Safford Unified School Dist. #1 v. Redding*, 129 S.Ct. 2633 (2009); *Illinois v. Lafayette*, 462 U.S. 640, 645, 103 S.Ct. 2605, 2609, 77 L.Ed.2d 65 (1983) ("the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street"); *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir. 1993); *Masters v. Crouch*, 872 F.2d 1248, 1253 (6th Cir. 1989) ("We have found no authority approving a practice of conducting a strip search of a person arrested for a simple traffic violation in the absence of at least reasonable suspicion"); *Tinetti v. Wittke*, 620 F.2d 160, 160 (7th Cir. 1980) (per curiam); *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973) (holding that "a consent not be coerced, by explicit or implicit means, by implied threat or covert force."). *U.S. v. Bolin*, 514 F.2d 554 (7th Cir. 1975); *U.S. v. Ivy*, 165 F. 397, 403 (6th Cir. 1998) (holding that the threat of an unlawful arrest renders consent involuntary); *U.S. v. Ocheltree*, 622 F.2d 992, 994 (9th Cir. 1980) (holding that a threat of an unreasonably prolonged detention rendered consent involuntary). Defendants violated the Fourth Amendment to the United States Constitution, King's fundamental right to privacy from the

Fourteenth Amendment, and 42 U.S.C. §1983 when they unlawfully searched under his clothing without his consent.

## Damages

29.    Plaintiff suffered mental anguish and emotional injuries, embarrassment, humiliation, shame, indignity, damages to reputation, and special damages incurred or will incur, including but not limited to legal fees, legal expenses, and other related expenses.

## Punitive Damages

30.    All individuals sued are liable for punitive damages as they were consciously indifferent to Plaintiff's constitutional rights.

## Demand for Jury Trial

31.    Plaintiff respectfully requests a jury trial.

## Relief

In light of the foregoing, Plaintiff requests Judgment against Defendants, jointly and severally as follows:

1.  Compensatory damages from the Defendants, in an amount to be determined by the trier of fact;

2.  Punitive damages from the Defendants, in an amount to be determined by the trier of fact;

3.  Pre-judgment and post-judgment interest;

4.  Reasonable costs, expenses, and attorney's fees pursuant to 42 U.S.C §1988(b), expert fees

    pursuant to 42 U.S.C. §1988(c); and

5.  All such other relief to which Plaintiff is entitled.

Respectfully Submitted,
PLAINTIFF

By:
/s/ Millie L. Thompson
Millie L. Thompson
Texas State Bar Number:  24067974
*The Law Office of Millie L. Thompson*
401 Congress Ave., Ste. 1540
Austin, Texas 78701
Telephone: (512) 293-5800
Fax: (512) 682-8721
Email: millieaustinlaw@gmail.com